# WANDA VINE *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NORTH BRANFORD ET AL.
## (SC 17619)
## (SC 17620)

Borden, Palmer, Vertefeuille, Zarella and Sullivan, Js.

Argued November 27, 2006—officially released March 6, 2007

*John M. Gesmonde,* for the appellant (named defendant).

*Michael J. Brandi*, with whom were *John A. Acampora*, and, on the brief, *Frank S. Marcucci*, for the appellant (defendant M & E Construction, Inc.).

*Daniel C. Burns*, with whom was *Pasquale Young*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. These certified appeals arise from the decision of the named defendant, the zoning board of appeals of the town of North Branford (board), granting the variance application of the defendant M & E Construction, Inc. (M & E).[1] The plaintiff, Wanda Vine, appealed from the board's decision to the trial court and the trial court dismissed the appeal. The plaintiff then appealed to the Appellate Court, which reversed the judgment of the trial court in a divided opinion. See *Vine* v. *Zoning Board of Appeals*, 93 Conn. App. 1, 887 A.2d 442 (2006). We granted the defendants' separate petitions for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the variance granted by the [board] was improper because the hardship was merely financial?" *Vine* v. *Zoning Board of Appeals*, 277 Conn. 918, 895 A.2d 794 (2006). We answer the certified question in the negative and reverse the judgment of the Appellate Court.

The record reveals the following facts and procedural history. M & E owns property consisting of three contiguous lots at 66, 72 and 76 Notch Hill Road in North Branford (town). The lots, which are located in an R-40 residential zone, originally were part of a four lot subdivision that was approved by the town's planning and zoning commission in 1968.[2] In 1981, the Connecti-

---

[1] Although the town of North Branford was a defendant at trial, it is not a party to this appeal. We refer to M & E and the board as the defendants in this opinion.

[2] The fourth lot was developed at some point and is not at issue in this appeal.

cut Light and Power Company (utility) acquired an easement by condemnation for purposes of installing electrical transmission lines. The easement was eighty feet wide and crossed the two lots located at 66 and 72 Notch Hill Road. The town's zoning regulations require a minimum 150 foot square of land on each building lot located in an R-40 zone; see North Branford Zoning Regs., § 24.2;[3] and provide that land subject to an easement for above ground utility transmission lines cannot be included in determining compliance with minimum lot area and shape requirements. See North Branford Zoning Regs., § 6.25.[4]

In 2001, M & E prepared a site plan proposal in which it sought to convert the three lots into two lots—lot A and lot B. Lot A consisted of the lot at 66 Notch Hill Road plus a portion of the lot at 72 Notch Hill Road and lot B consisted of the remainder of the lot at 72 Notch Hill Road plus the lot at 76 Notch Hill Road. Because the utility easement precluded compliance with the 150 foot square requirement on lot A, M & E submitted to the board an application for a variance. The board denied that application. M & E then submitted a second application for a variance requesting essentially the same relief. In the portion of the application in which M & E was required to "[d]escribe the ground of this appeal, stating the hardship," M & E stated that "[t]he existing [lot located at 66 Notch Hill Road] and a portion of [the lot located at 72 Notch Hill Road] are

[3] Section 24.2 of the North Branford zoning regulations provides in relevant part: "Each lot shall have at least the minimum area as specified in Schedule B. . . ." Schedule B to § 24 of the zoning regulations provides in relevant part that the "[m]inimum dimension of square on the lot" in an R-40 zone is 150 feet.

[4] Section 6.25 of the North Branford zoning regulations provides in relevant part: "In determining compliance with minimum lot area and shape requirements of these Regulations, land subject to easements for drainage facilities and underground public utilities may be included, but [no] . . . easement for above-ground public utility transmission lines may be included. . . ."

encumbered by an [eighty foot] wide above ground [utility] easement. The utility easement impairs [the] 150 [foot] square . . . requirement and there is no ability to place an unencumbered 150 [foot] square anywhere on the proposed Lot A without being compromised by the location of the utility easement. . . . The current property owner cannot utilize the proposed Lot A as an approved building lot unless a variance of the 150 [foot] square . . . requirement is granted."

The board conducted a public hearing on the application at its regular meeting on April 14, 2003. The plaintiff, who owns land abutting M & E's property, previously had submitted a letter to the board in which she objected to the construction of a house on the lot located at 66 Notch Hill Road.[5] The letter was read into the record at the hearing. After discussing the merits of the application, the board voted to grant it. Explaining his favorable vote, one of the board members, Thomas Katon, stated that "the variance is so nominal and the impact so minimal on the neighbors and the lot in general, that it is . . . form over substance to insist upon this [150 foot] square [requirement] of the regulations. . . . [I]n terms of intensity of development, it appears that [before the taking of the utility easement] they envisioned three houses jammed in there." He reasoned that any concerns that granting the variance would contravene settled expectations about the density of the area were baseless because "it could have been three houses but for the fortuitous circumstance of the easement . . . ." Board member Steven DeFrank also explained his favorable

---

[5] The letter stated in relevant part: "There is not sufficient land space on Lot 66 to build a house under the high tension lines and hope you will decline this variance.

"There is, however, enough land on Lot 72 and hope they can build a house there."

vote by stating that, "but for the easements, you would have a more crowded area."

Thereafter, the plaintiff appealed from the board's decision to the trial court. After a hearing, the trial court dismissed the appeal. In its memorandum of decision, the court took note of the plaintiff's argument that "M & E can still build one house on proposed lot B and that a hardship does not arise simply because the owner of the land cannot use the land to its maximum financial potential." It concluded, however, that the easement "rendered the property nonconforming because the configuration of the easement across the property prevents a 150 foot square from being placed anywhere on proposed lot A" and, therefore, had produced "an unusual hardship for M & E in the use of its property" that justified the granting of the variance. The court relied on this court's decision in *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 328, 387 A.2d 542 (1978) ("there is a clear case of uncommon hardship beyond the control of a property owner when the state seeks to condemn a portion of his or her land and thereby render it nonconforming to a minimum lot area restriction"). The court further concluded that the variance would not substantially affect the town's comprehensive zoning plan because, under the subdivision as approved in 1968, M & E could have built houses on each of the three lots.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. She claimed on appeal that "the [trial] court improperly determined that (1) the hardship claimed by M & E was not self-created, (2) the claimed hardship was not merely financial, (3) the 'purchaser with knowledge' rule did not apply, and (4) material differences existed between the application for the variance at issue in this appeal and the application M & E filed in 2001 that was denied, which permitted the board to reverse its 2001 decision." *Vine* v.

*Zoning Board of Appeals*, supra, 93 Conn. App. 2–3. The majority of the Appellate Court panel concluded that, because only extreme financial hardship can justify the granting of a variance, and M & E had not presented any evidence that enforcement of the regulations would destroy the economic utility of the property, the trial court improperly had dismissed the plaintiff's appeal. Id., 13–15. Accordingly, the Appellate Court majority reversed the judgment of the trial court without reaching the plaintiff's first, third and fourth claims. The Appellate Court majority also noted that the board had contended that the elimination of nonconformities may serve as an independent basis for granting a variance; see *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 708–10, 535 A.2d 799 (1988); *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 572, 785 A.2d 601 (2001); but declined to consider that claim because it "was raised neither before the board nor the trial court" and "the defendants have not raised that issue as an alternate ground for affirming the court's decision." *Vine* v. *Zoning Board of Appeals*, supra, 3 n.3.

These certified appeals followed. The defendants claim on appeal that the Appellate Court majority improperly reversed the judgment of the trial court on the ground that the enforcement of § 6.25 of the town's zoning regulations on lot A would, at most, reduce the value of the property and would not destroy its economic utility. They further claim that the Appellate Court majority improperly determined that the board failed to preserve for review the claim that it properly granted the variance under *Adolphson* and *Stancuna* because the variance reduced a nonconforming use to a less offensive use. We conclude that the board's decision should be affirmed under those cases.

At the outset, we set forth our standard of review. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule,

according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004). "Because the plaintiff[s'] appeal to the trial court is based solely on the record, the scope of the trial court's review of the [board's] decision and the scope of our review of that decision are the same." (Internal quotation marks omitted.) *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 726 n.29, 780 A.2d 1 (2001).

We next review the law governing applications for a zoning variance. Zoning boards of appeal have authority pursuant to General Statutes § 8-6[6] to grant variances

---

[6] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that

from local zoning regulations. "One who seeks a variance must show that, because of some unusual characteristic of his property, a literal enforcement of the zoning regulations would result in unusual hardship to him. . . . The hardship complained of must arise directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." (Citations omitted; internal quotation marks omitted.) *Belknap* v. *Zoning Board of Appeals*, 155 Conn. 380, 383, 232 A.2d 922 (1967). "Where the condition which results in the hardship is due to one's own voluntary act, the zoning board is without the power to grant a variance. . . . Where . . . the hardship arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance." (Citation omitted.) Id., 384.

"Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of . . . unnecessary hardship. . . . Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect." (Citations omitted; internal quotation marks omitted.) *Grillo* v. *Zoning*

substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. No such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier such application."

*Board of Appeals*, 206 Conn. 362, 369, 537 A.2d 1030 (1988). "Zoning regulations have such an effect in the extreme situation where the application of the regulations renders the property in question practically worthless." *Norwood* v. *Zoning Board of Appeals*, 62 Conn. App. 528, 535, 772 A.2d 624 (2001).

In cases in which an extreme hardship has not been established, the reduction of a nonconforming use to a less offensive prohibited use may constitute an independent ground for granting a variance. See *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 708–10; see also *Stancuna* v. *Zoning Board of Appeals*, supra, 66 Conn. App. 572 ("[t]hat a variance will eliminate a nonconforming use constitutes independent grounds for sustaining the granting of a variance"). In *Adolphson*, the plaintiff, an abutting landowner, appealed to the trial court from the decision of the zoning board of appeals of the town of Fairfield granting the application of the defendant landowners for a variance that would allow them to convert the use of their property from its current nonconforming use as a foundry to a prohibited use as an automobile repair shop. *Adolphson* v. *Zoning Board of Appeals*, supra, 705–706. The trial court dismissed the appeal on the ground that the use of the property as an automobile repair shop would be less offensive to surrounding residents than its use as a foundry. Id., 706. On appeal, this court affirmed the judgment of the trial court on the ground that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit—[i]n no case should they be allowed to increase. . . . The accepted method of accomplishing the ultimate object is that, while the alien use is permitted to continue until some change is made or contemplated, thereupon, so far as is expedient, advantage is taken of this fact to compel a lessening or

suppression of the nonconformity." (Citations omitted; internal quotation marks omitted.) Id., 710.

In *Stancuna,* the zoning board of appeals of the town of Wallingford granted the defendant landowner's application for a variance from a twenty foot side yard setback requirement so that he could construct a new commercial building on his property. *Stancuna v. Zoning Board of Appeals,* supra, 66 Conn. App. 567. The property was in a commercial zone, but was occupied by a single-family residence, which was a preexisting nonconforming use. Id., 572. The board granted the variance and the plaintiff, an abutting landowner, appealed to the trial court, which dismissed the appeal. Id., 567. On appeal to the Appellate Court, that court concluded that the variance properly had been granted because it eliminated a nonconforming use, was consistent with the town's comprehensive development plan and would not undermine the health, safety and welfare of the surrounding neighborhood. Id., 572.

Because it is dispositive, we first address the defendants' claim that the board's decision granting the variance was proper under *Adolphson* and *Stancuna.* As we have indicated, the Appellate Court majority concluded that this claim was not reviewable because it had not been raised during proceedings before the board or the trial court. *Vine v. Zoning Board of Appeals,* supra, 93 Conn. App. 3 n.3. We conclude that the claim is reviewable and agree with the board that its decision to grant the variance was proper because it reduced the preexisting nonconforming use of the property to a less offensive use.

The following additional facts and procedural history are relevant to this claim. In connection with M & E's variance application, the town's attorney—who also represents the board in this appeal—submitted two opinions to the board in which he stated that the 150

foot minimum square requirement had been in place when the property was subdivided in 1968 and that the three lots had met the requirement at that time. He further advised the board that, after the taking of the above ground electrical utility easement, the lot at 66 Notch Hill Road no longer met the minimum square requirement. Thereafter, Carol A. Zebb, the town planner and planning and zoning administrator, advised the board that "[t]he proposed combination of 66 Notch Hill [Road] . . . and a portion of 72 Notch Hill [Road] . . . into Lot A results in a more conforming lot area than the separate [l]ots . . . . The applicant has worked under [§] 5.8.3 of the Zoning Regulation . . . to create a less nonconforming lot."[7] She also stated that, even if the lot at 66 Notch Hill Road and the entire lot at 72 Notch Hill Road were combined into one lot, the lot still would not meet the minimum square requirement.[8] As we have indicated, board member Katon explained his vote in favor of the variance on the ground that M & E *could have* built three houses *"but for the fortuitous circumstance of the easement,"* and board member DeFrank agreed with that assessment. (Emphasis added.)

On appeal to the trial court, M & E quoted Zebb's memorandum to the board and argued that the variance properly was granted because "two houses, rather than

[7] Section 5.8 of the North Branford zoning regulations provides in relevant part: "A lot which fails to meet the area, shape or frontage or any other applicable requirements of these Regulations pertaining to lots, may be used as a lot, and a building or other structure may be constructed, reconstructed, enlarged, extended, moved or structurally altered thereon, provided that all of the following requirements are met . . .

"5.8.3 If the lot fails to meet the area requirements of these Regulations, the owner of the lot shall not also be the owner of a contiguous lot, lots or land which in combination with such lot that fails to conform would make a lot that conforms or more nearly conforms to the area requirements of these Regulations pertaining to lots."

[8] It is clear, therefore, that the lot at 72 Notch Hill Road also did not meet the minimum square requirement after the easement was taken.

three [which M & E had been entitled to build under the 1968 subdivision plan], would be less crowded in the neighborhood." The board argued that, "[a]lthough the area and bulk standards in the local [r]egulations have not changed since the time of the original subdivision approval in 1968, a hardship was created when [the utility] took an easement for the transmission lines, making it impossible to establish the minimum square on the property without intruding into the area of the easement." The trial court appeared to suggest in its memorandum of decision that, without the variance, M & E would be limited to building a single house on lot B, but did not directly address M & E's argument that the proposed use would be less nonconforming than the currently permitted use.

Thus, the record suggests that both the board and the trial court believed that the issue before them was whether enforcing the regulations would result in a *hardship* to M & E because the use of the property to build three houses had been permitted *at the time of the original subdivision,* but M & E currently was precluded from building three houses on the three lots because of the easement. Moreover, both the board and the trial court concluded that the use of the property to build two houses did not violate the town's general planning principles because, *in the absence of the easement,* the density would have been even greater. Nothing in the record suggests that the board or the trial court understood the claim to be that M & E *currently* is entitled to build three houses, one on each of the three subdivision lots, and that, therefore, the granting of the variance would reduce an *existing* nonconforming use and render the use of the property less offensive.

On appeal to the Appellate Court, however, the board claimed for the first time that the 150 foot minimum square requirement had been adopted *after* the subdivision of the property in 1968. It further claimed that,

even before the taking of the utility easement, the existing three lots did not conform to the minimum square requirement.[9] The subdivision therefore constituted a preexisting nonconforming use that currently entitles M & E to build three houses on the property. Accordingly, it argued, the variance properly was granted on the ground that it rendered a preexisting nonconforming use more conforming. The plaintiff did not dispute the factual underpinnings of the board's claim.

The Appellate Court majority ultimately concluded that neither the 150 foot minimum square requirement nor the prohibition against using land subject to an above ground utility easement in calculating the 150 foot square applied to the property. As a result, it determined that M & E currently could build one house on each of the three lots under the existing subdivision. See *Vine* v. *Zoning Board of Appeals*, supra, 93 Conn. App. 3 n.5, 13 n.16. As we have indicated, the Appellate Court majority also concluded that the board's claim under *Adolphson* and *Stancuna* was not preserved for review. Id., 3 n.3.

In its brief to this court, the board again claims that M & E could "[crowd] three . . . houses of any shape one could imagine to fit on each of the three . . . lots, continuing nonconformities and noncompliance with the zoning regulations," and argues that reducing this nonconforming use was a valid reason for granting the variance. The plaintiff concedes in her brief that, "[w]ithout the variance, [M & E] could still build three houses on the subject property," and contends, there-

---

[9] The town's current zoning regulations, which are the only regulations in the record before us, were adopted in 1977. The record does not disclose whether the 150 foot minimum square requirement was in effect before that time and, if so, when it was adopted. We are also unable to discern from the record whether any of the three lots approved in 1968 met the requirement.

fore, that denying the variance would not result in any hardship.

M & E joins the board's contention that granting the variance would reduce a nonconforming use, but appears to claim in its brief that, following the easement, it was precluded by § 6.25 of the town's zoning regulations from building on two of the three existing lots, namely, those at 66 and 72 Notch Hill Road. M & E conceded at oral argument, however, that § 6.25 does not apply to the three lots as they are currently configured. It also claimed for the first time that the lot at 72 Notch Hill Road is unbuildable because of site conditions and separate utility regulations that prohibit the construction of any building on an electrical utility easement.[10]

With this rather sketchy and confused background in mind, we conclude that the Appellate Court majority was technically correct when it determined that the board previously had not raised or preserved for review the claim that it properly had granted the variance because it would reduce a preexisting nonconforming use under *Stancuna* and *Adolphson*. Although the board and the trial court appeared to assume that three houses would not be permitted under § 6.25, they never squarely addressed in their decisions the question of

---

[10] M & E further claimed that the board had found that building three houses would not be feasible. Our review of the record reveals, however, that, although the board appeared to assume that § 6.25 would preclude the building of three houses, it made no finding that, if that section did not apply, the construction of three houses would be impracticable for other reasons. Moreover, contrary to M & E's claim at oral argument, the evidence in the record is not sufficient to support a conclusion that the lot at 72 Notch Hill Road is unbuildable.

The plaintiff claimed at oral argument before this court that the site plan showing the proposed house location for lot B establishes that the lot at 72 Notch Hill Road *is* buildable. The site plan shows, however, that the proposed house location for lot B straddles the existing property line between 72 and 76 Notch Hill Road. We are unable to discern from the site plan whether a house could be built entirely on the lot at 72 Notch Hill Road.

how many houses M & E actually would be entitled to build on the property if the variance were not granted, or whether granting the variance actually would result in a development that was more compliant with the zoning regulations.

We now are confronted, however, with the Appellate Court's conclusion—which none of the parties disputes—that § 6.25 of the town zoning regulations does not apply to the existing three lots and, therefore, would not prevent M & E from building three houses on the property if the variance were denied. Indeed, in her brief to this court, the plaintiff relies heavily on this conclusion to support her claim that M & E has not established that denying the variance would cause exceptional hardship. Although M & E claims that, for reasons *unrelated* to the town's zoning regulations, it could not build three houses on the property, it acknowledges that it could build two houses. Thus, all of the parties now agree that a critical underpinning for the defendants' claim under *Stancuna* exists. They disagree only about whether, as a matter of law, *Adolphson* and *Stancuna* justify the board's decision granting the variance.

We recognize that, ordinarily, an alternate ground for affirmance must be raised in the trial court in order to be considered on appeal.[11] See *New Haven* v. *Bonner*, 272 Conn. 489, 498, 863 A.2d 680 (2005). We also have held that, "[i]f the alternate issue was not ruled on by the trial court, the issue must be one that the trial court

---

[11] As a procedural matter, we note that the defendants were not required to file notice in this court that they intended to raise an alternate ground for affirmance pursuant to Practice Book § 84-11, because they are not appellees and are not raising an alternate ground to affirm the judgment of the Appellate Court. Nevertheless, because the defendants are raising an alternate ground to affirm the judgment of the trial court, the principles governing preservation of claims raising alternate grounds for affirmance apply to the defendants' *Stancuna* claim.

would have been forced to rule in favor of the appellee. Any other test would usurp the trial court's discretion." (Internal quotation marks omitted.) *Zahringer* v. *Zahringer*, 262 Conn. 360, 371, 815 A.2d 75 (2003). Under these extraordinary circumstances, however, we conclude that we should review the defendants' claim that *Stancuna* and *Adolphson* provide an alternate ground for affirming the board's decision granting the variance on the ground that it would result in a more conforming use. First, the issue before us is a pure question of law and does not involve the exercise of discretion by the board or the trial court. Second, unlike the trial court in nonadministrative appeals, the board, which was the initial decision maker in this case, is a party to this appeal and raises the issue that we review. Consequently, we know how the board would have ruled on the issue if it had been raised previously, and there is no possibility that we might usurp its discretion by reviewing it. Third, the record is adequate for review, the issue has been fully briefed by all of the parties, and considering the claim could result in no unfair surprise or prejudice to the plaintiff.

Finally, the issue is closely intertwined with the certified question. The Appellate Court majority held; see *Vine* v. *Zoning Board of Appeals*, supra, 93 Conn. App. 13 n.16, 15; and the plaintiff claims on appeal to this court, that the fact that M & E could build three houses on the existing lots under the town zoning regulations substantially undermines M & E's claim that denying the variance would result in exceptional hardship. It would be unfair to accept the truth of this now undisputed circumstance for purposes of addressing the certified question while refusing to consider its implications under *Stancuna*. See *White* v. *Kampner*, 229 Conn. 465, 467 n.1, 641 A.2d 1381 (1994) ("[w]hen the dictates of justice so demand, we may expand or

modify a certified issue"). Accordingly, we review the claim.

We conclude that *Adolphson* and *Stancuna* provide an alternate ground for affirming the board's decision, regardless of whether M & E can build three houses on the property in its current configuration or, as M & E now claims, the site conditions and separate utility regulations would allow it to build houses on only two of the lots. In either case, granting the variance would increase the size and buildable area of the lots, resulting in a development that more nearly conforms to the technical requirements of the town's zoning regulations. Moreover, if M & E currently can build three houses on the property, granting the variance to allow conversion of the property into two buildable lots would reduce the density of the development, which presumably would be " 'less offensive to the surrounding residents . . . .' " *Adolphson* v. *Zoning Board of Appeals,* supra, 205 Conn. 710. Even if M & E currently is limited to building two houses on the property, granting the variance could not result in a *more* offensive use of the property.

Indeed, the plaintiff has made no claim that the proposed development of the property would be more offensive to the neighboring residents than the development that would be allowed if the variance were denied.[12] She relies solely on the principle that a variance should not be granted unless the enforcement of the zoning regulations would entail exceptional hardship to the property owner. We are compelled to agree

---

[12] We can only conclude that the plaintiff objects to the granting of the variance because she believes that M & E will choose to build a single house on lot B if the variance is denied instead of building multiple houses on the smaller lots. Any such belief would be speculative and could not support a claim that granting the variance would result in a greater density. None of the parties disputes that M & E currently is *entitled* to build at least two houses on the property.

with the board that it would elevate form over substance to insist on that principle when there is no claim or evidence that granting the variance could result in even minimal harm to the neighborhood or undermine in any way the overarching zoning scheme, especially when there is substantial evidence to support a conclusion that it would result in a more conforming use.

The plaintiff argues, however, that the present case is distinguishable from *Stancuna*. She claims that *Stancuna* is not applicable because, in that case, "the lot predated the applicable regulation" while, in the present case, "the proposed two lots . . . do not predate the regulation." The relevant inquiry under *Stancuna*, however, is not whether the *lot* that is the subject of the proposed variance predated the applicable regulation, but whether the variance will eliminate a *nonconforming use* that predated the regulation. If a variance will render the use of the property more conforming by allowing the property owner to create a new lot, the justification for granting the variance is no less compelling. Accordingly, we reject this claim.

The plaintiff also claims that *Stancuna* is distinguishable because the variance in that case eliminated a preexisting nonconforming use, namely, the use of a commercially zoned property as a residence, while the variance in the present case would not eliminate a nonconforming use, but would merely replace one nonconforming use with another. The plaintiff fails to recognize, however, that, in *Stancuna*, the variance was required for the very reason that the new use *also* was nonconforming. The board in that case simply made the judgment, which was affirmed by the trial court and the Appellate Court, that the new nonconforming use was more compliant with the overall zoning plan than the previous nonconforming use. Similarly, in the present case, the use of the property to build two houses on two lots, although nonconforming, more closely con-

forms to the town's zoning regulations than the use of the property to build two or three houses on three lots. Accordingly, we reject this claim.

For the foregoing reasons, we conclude that the board's decision granting M & E's application for a variance should be affirmed on the ground that it would reduce the nonconforming use of the property. This conclusion disposes of all of the plaintiff's claims on appeal to the Appellate Court relating to the merits of M & E's application for a variance. The Appellate Court must address on remand, however, the plaintiff's claim that the board improperly reversed its denial of M & E's first application for a variance because material differences existed between the first application and the application under review in this appeal.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the plaintiff's claim that the trial court improperly determined that the board properly reversed its decision on M & E's first application for a variance.

In this opinion the other justices concurred.