WILLIAM H. HESCOCK ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF STONINGTON ET AL.
(AC 29316)

Lavine, Beach and Mihalakos, Js.

Argued October 16, 2008—officially released January 20, 2009

*William H. Hescock*, with whom, on the brief, was *Mark R. Kepple*, for the appellants (plaintiffs).

*Jeffrey T. Londregan*, for the appellee (named defendant).

*Eric Knapp* filed a brief for the appellees (defendant Thompson Wyper et al.).

*Opinion*

LAVINE, J. The plaintiffs, William H. Hescock and Regina C. Hescock, appeal from the judgment of the trial court dismissing their appeal from the decision by the defendant zoning board of appeals of the town of Stonington (board) granting an application for a variance submitted by the defendants Carol Holt and Thompson Wyper.[1] The plaintiffs claim that the court improperly (1) concluded that the approval of the defendants' coastal site plan review application was supported by substantial evidence in the record, (2)

---

[1] In this opinion, we refer to Holt and Wyper as the defendants.

concluded that the board complied with local flood zone regulations and (3) upheld the variance without substantial evidence of unusual hardship. We affirm the judgment of the trial court.

The following undisputed facts are relevant to the resolution of the plaintiffs' appeal. The defendants own real property at 57 Boulder Avenue in Stonington. The plaintiffs own property contiguous to or within 100 feet from the defendants' property.[2] Due to its position, the defendants' property is subject to the portions of Stonington zoning regulations (regulations), entitled coastal area management overlay district (coastal zone) and flood hazard overlay district (flood zone).[3] The coastal zone section of the regulations implements the Coastal Management Act (act); General Statutes §§ 22a-90 through 22a-112; and the flood zone section implements Federal Emergency Management Agency (FEMA) regulations.

On May 2, 2006, the defendants, who wanted to raze the house that occupied their property and to construct a new one, filed an application with the board, seeking a variance from § 7.7.8.3.1 of the regulations, which requires that "[a]ll new construction or substantial improvement shall be located 100 feet landward of the reach of the mean high tide." The defendants, whose existing house is located forty-four feet from the mean high tide, wanted to locate the new house forty-seven feet from the mean high tide. In a portion of the application requiring an explanation of hardship,[4] the defendants wrote that "[t]he proposal will replace an existing

---

[2] The plaintiffs therefore have standing as aggrieved persons under General Statutes § 8-8 (b).

[3] See Stonington Zoning Regs., §§ 7.3 and 7.7.

[4] The application defines hardship, or a reason for requesting a variance, as a "peculiar or unique feature of a particular piece of property that prevents the landowner from making a reasonable use of the property in conformance with the existing zoning regulations. A hardship has nothing to do with the personal circumstances of the landowner. The fact that the owner might be able to make a more profitable use of the land if it were not for the

home below the base flood elevation with new construction that will meet all flood regulations with the exception of regulation 7.7.8.3.1. [Seventy-six percent] of the lot is within 100 [feet] of mean high tide [and] 57 Boulder Avenue qualifies for a variance under [§] 7.7.9.1.2.[5] It is a .20 acre lot that is surrounded by homes constructed below the base flood level." Along with the variance application and on the same day, the defendants submitted an application for a municipal coastal site plan review, which, pursuant to § 7.3.1.4 of the regulations and General Statutes § 22a-105 (b) (4), must accompany variance applications for projects within, or partly within, the coastal boundary.

A public hearing on the applications was held on June 13, 2006. The board approved both the variance and the coastal site plan review applications, issuing two separate records of decision. On August 1, 2006, the plaintiffs appealed from the board's decision granting the variance. On June 13, 2007, the court dismissed the plaintiffs' appeal. The plaintiffs filed a motion to reargue and to reconsider judgment, which the court denied. On November 5, 2007, the plaintiffs filed the present appeal from the court's judgment dismissing their appeal. Further facts will be set forth as necessary.

We first set forth our standard of review. "It is well established that an appellate court will not retry the facts. Our review is to determine whether the judgment of the trial court was clearly erroneous or contrary to the law. . . . When . . . the trial court draws conclusions of law, [the scope of our appellate] review is plenary and we must decide whether its conclusions

zoning regulations does not equate to hardship. Proof of a true hardship is a legal requirement for a [z]oning [b]oard of [a]ppeals to issue a variance."

[5] Section 7.7.9.1.2 of the Stonington zoning regulations provides that "[v]ariances may be issued . . . for new construction . . . on a lot of one-half acre or less in size contiguous to and surrounded by lots with existing structures constructed below the base flood level . . . ."

are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pinchbeck* v. *Planning & Zoning Commission*, 69 Conn. App. 796, 801, 796 A.2d 1208, cert. denied, 261 Conn. 928, 806 A.2d 1065 (2002). Because the plaintiffs' appeal to the trial court is based solely on the record, the scope of the trial court's review of the board's decision and the scope of our review of that decision are the same. See *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 726 n.29, 780 A.2d 1 (2001). When the resolution of an issue requires us to review and to analyze the relevant town zoning regulations, "the interpretation of the regulations presents a question of law [and] our review is plenary." (Internal quotation marks omitted.) *Field Point Park Assn., Inc.* v. *Planning & Zoning Commission*, 103 Conn. App. 437, 440, 930 A.2d 45 (2007).

I

The plaintiffs first claim[6] that the court improperly concluded that the board's approval of the defendants'

---

[6] The plaintiffs also claim that the court improperly concluded that it lacked jurisdiction to review the board's approval of the defendants' coastal site plan application because the court misread *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 832 A.2d 611 (2003), and failed to distinguish the procedural circumstances of the present case. In its memorandum of decision, the court stated that "[b]y statute and regulation, [coastal site plan] review has been made another component of the zoning process. [It] does not result in an appealable decision separate from the variance approved. . . . The court has no jurisdiction to consider the [coastal site plan] review as a separate appealable decision."

Later in the memorandum, the court, however, concluded that "the new construction allowed by the variance will permit the erection of a building which is in conformance with the [coastal zone] requirements as set forth in the zoning regulations." The plaintiffs argue that the court's statement that it lacked jurisdiction to review the board's approval of the application for coastal site plan review means that it did not review it, despite the fact that the court subsequently seemed to have concluded that the board properly approved the coastal site plan application.

"It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear,

application for coastal site plan review was reasonably supported by substantial evidence in the record. We disagree.

The following additional facts are relevant to our analysis of the plaintiffs' claim. Section II of the defendants' application for coastal site plan review, submitted along with the application for a variance, indicates that it was accompanied by plans showing project location, existing and proposed conditions, soil erosion and sediment controls, storm water treatment practices and reference datum. The application shows that the defendants did not submit plans showing coastal resources on or contiguous to the site, the high tide line or mean high water mark elevation. In part II A of the application, the defendants described the proposed project and stated that the coverage of impervious surfaces would decrease by 7 percent. In part II B of the application, the defendants described proposed storm water management practices. In part III, they identified ten types of coastal resources, listed in General Statutes § 22a-93 (7) and § 7.3.3 of the regulations as on-site, within the influence of or adjacent to the project.[7] In parts IV and V, the defendants identified applicable coastal

the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) Berglass v. Berglass, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). We therefore construe the court's memorandum of decision to indicate that it reviewed the board's approval of the application for a coastal site plan review and upheld it without providing analysis. We consequently do not address the plaintiffs' claim that the court failed to review the approval of the coastal site plan application because it improperly concluded that it lacked jurisdiction.

[7] The defendants identified the following coastal resources: general resources, beaches and dunes, bluffs and escarpments, coastal hazard area, coastal waters, estuarine embayments, near shore waters, offshore waters, developed shorefront, rocky shorefront, shellfish concentration areas, shore lands and tidal wetlands. See General Statutes § 22a-93 (7).

resource policies and standards[8] and, in part VI, stated that their project is consistent with those policies and standards. In parts VII through IX, the defendants indicated that there are no potential adverse impacts[9] on coastal resources or opportunities for water dependent uses.[10]

At the public hearing, the board heard from interested parties, including William Hescock, Wyper and Mark Comeau, an architect retained by the defendants. The board read into evidence a letter from an environmental analyst at the department of environmental protection, Carol Szymanski, submitted to the board on June 5,

[8] The following coastal use and activity policies and standards outlined in General Statutes § 22a-92 (a) and (b) were identified by the defendants as applicable to their project: "(a) . . . (1) [t]o insure that the development, preservation or use of the land and water resources of the coastal area proceeds in a manner consistent with the capability of the land and water resources to support development, preservation or use without significantly disrupting either the natural environment or sound economic growth; (2) [t]o preserve and enhance coastal resources in accordance with the policies established by chapters 439, 440, 446i, 446k, 447, 474 and 477; (3) [t]o give high priority and preference to uses and facilities which are dependent upon proximity to the water or the shorelands immediately adjacent to marine and tidal waters . . . (9) [t]o coordinate planning and regulatory activities of public agencies at all levels of government to insure maximum protection of coastal resources while minimizing conflicts and disruption of economic development . . . (b) . . . [t]o manage uses in the coastal boundary through existing municipal planning, zoning and other local regulatory authorities and through existing state structures, dredging, wetlands, and other state siting and regulatory authorities, giving highest priority and preference to water-dependent uses and facilities in shorefront areas." General Statutes § 22a-92 (a) (1), (2), (3) and (9), and 22a-92 (b) (1) (A).

[9] General Statutes §22a-93 (15) defines potential adverse impacts as including but not limited to "(A) [d]egrading water quality . . . (B) degrading existing circulation patterns of coastal waters . . . (C) degrading natural erosion patterns . . . (D) degrading natural or existing drainage patterns . . . (E) increasing the hazard of coastal flooding . . . (F) degrading visual quality through significant alteration of the natural features of vistas and view points; (G) degrading or destroying essential wildlife, finfish or shellfish habitat . . . and (H) degrading tidal wetlands, beaches and dunes, rocky shorefronts, and bluffs and escarpments through significant alteration of their natural characteristics or function."

[10] "Water-dependent uses" are defined in General Statutes § 22a-93 (16).

2006. Szymanski concluded that the application was incomplete for the purposes of determining whether the requested variance was consistent with the goals, policies and standards of the act. She stated that the following information was needed to determine compliance with the act: a site plan outlining existing conditions, location of the high tide line, delineation of the coastal flood hazard zone, location of the 100 foot distance from mean high tide, building elevations and location of the driveway. The transcript of the hearing indicates that, however, Comeau apparently while discussing maps and records, pointed out the mean high tide line and the 100 foot distance to the board members. Comeau also discussed existing and proposed building elevations. The transcript and the record also indicate that additional documents, including a map outlining existing conditions recommended by Szymanski, were submitted to the board on the day of the hearing. Comeau also addressed some of the concerns raised in Szymanski's letter, such as building elevations, and specifically disputed the need for more information on the extent of the encroachment on the coastal resources. William Hescock, the only speaker at the hearing opposed to the variance, did not introduce any evidence related to the coastal site plan review.

The portion of the transcript documenting the board's decision-making process indicates that the board discussed Szymanski's letter. The board approved the defendants' application for coastal site plan review on June 13, 2006, but left blank the area provided for stipulations or reasons on the record of decision. The board approved the defendants' application for a variance on the same date and included the following reason on that record of decision: "as presented—will diminish existing non-conformity and will address and improve flood zone issues." The court, in its memorandum of decision, provided no separate analysis of whether the

board's approval of the defendants' application for coastal site plan review reasonably was supported by the record. The court did conclude, however, that the new construction would conform to the coastal zone regulations.

Our review of the board's approval of the defendants' application for the coastal site plan review is guided by *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 635 A.2d 1220 (1994).[11] In that case, our Supreme Court held that "[c]onclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . . The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. . . . The evidence, however, to support any such reason must be substantial . . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) Id., 198–201; see also *Pinchbeck* v. *Planning & Zoning Commission*, supra, 69

[11] We note here that our Supreme Court recently held in *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, supra, 266 Conn. 351, that the act "strongly suggests that a coastal site plan review was intended to be part and parcel of the planning or zoning application or referral that triggers the coastal site plan review . . . ." The court in *Fort Trumbull Conservancy, LLC*, also stated, however, that its decision was consistent with *DeBeradinis* v. *Zoning Commission*, supra, 228 Conn. 187; see *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, supra, 358–59; and did not provide any new guidance concerning the judicial review of coastal site plans. We conclude that *DeBeradinis* provides a proper standard of review of a coastal site plan approval and provides a separate analysis of whether there is substantial evidence in the record to support the board's approval of the application for a coastal site plan review. See *DeBeradinis* v. *Zoning Commission*, supra, 198.

Conn. App. 800 (proper standard of trial court review of coastal site plan is whether decision supported by substantial evidence). When the zoning body fails to state reasons for its decision on the record, the reviewing court has a duty to search the entire record before it to find a basis for the board's decision. *Gagnon* v. *Inland Wetlands & Watercourses Commission*, 213 Conn. 604, 608, 569 A.2d 1094 (1990).

We conclude that the board's approval of the defendants' application for coastal site plan review is supported by substantial evidence in the record. First, we agree with the plaintiffs that the board was required to submit its findings on the application for coastal site plan review in writing. General Statutes § 22a-106 (e) provides in relevant part that "[i]n approving any activity proposed in a coastal site plan, the municipal board or commission shall make a written finding that the proposed activity . . . (1) [i]s consistent with all applicable goals and policies in section 22a-92; [and] (2) incorporates as conditions or modifications all reasonable measures which would mitigate the adverse impacts of the proposed activity on both coastal resources and future water-dependent development activities." The board's failure to state its reasons in writing is not fatal, however, because, when the board fails to make written findings, the reviewing court must search the record for sufficiency of evidence supporting the board's decision. See *Bishop* v. *Zoning Board of Appeals*, 92 Conn. App. 600, 606–607, 886 A.2d 470 (2005), cert. denied, 277 Conn. 906, 894 A.2d 986 (2006).

Our search of the record reveals substantial support for the board's approval of the coastal site plan review application. The board was required to evaluate the coastal site plan application and to determine the extent and acceptability of any adverse impact. See Stonington Zoning Regs., § 7.3.4; General Statutes § 22a-106 (e). The plaintiffs argue that the board failed to do this

because Szymanski's letter concluded that the application was incomplete and because the defendants did not submit a "coastal site plan" map as required by General Statutes § 22a-105 (c). We find that the record before the board contained sufficient information for it to evaluate the application and determine the extent and acceptability of potential adverse impacts, and, notwithstanding the sparse record on this issue, we see no reason to conclude that it failed to perform its duty. The transcript of the hearing indicates that the board reviewed the defendants' application and accompanying materials, as well as Szymanski's letter. The defendants' application evaluated land and water resources, stated that there were no adverse impacts on those resources and even proposed mitigating measures, such as the decreased coverage of impervious surfaces and best storm water management practices. See Stonington Zoning Regs., § 7.3.3 (information required in applications for coastal site plan review). No evidence was submitted at the hearing, by the plaintiffs or anyone else, contradicting the information contained in the defendants' application or suggesting that there were potential adverse impacts on coastal resources or opportunities for water dependent uses associated with the defendants' project. The only other evidence in the record, besides the defendants' application, was Szymanski's letter, which concluded that the application was incomplete for the purposes of determining the project's consistency with the act.

It is important to note that General Statutes § 22a-109 (d) provides that a zoning board must consider the recommendations or comments submitted by the commissioner of environmental protection, but there is no indication in the act or elsewhere that such recommendations or comments are binding on the board. It is undisputed that the board considered Szymanski's letter because it read it in its entirety at the hearing

and discussed it during the deliberations. We cannot substitute our judgment for that of the board as to the weight of the evidence before it. *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 560, 916 A.2d 5 (2007). The transcript of the hearing indicates that much of the missing information mentioned in Szymanski's letter was provided by the defendants and Comeau on the day of the hearing. Comeau showed the board members the location of the mean high tide line and the 100 foot distance from it and discussed the building elevations. A site plan outlining existing conditions was included in the record that was before the board. In light of the record that was before the board, we conclude that its approval of the application for coastal site plan review was supported by substantial evidence.

We therefore conclude that the court properly determined that the board's approval of the defendants' application for a coastal site plan review was supported by substantial evidence in the record.

II

The plaintiffs next claim that the court failed to address their argument that the board did not comply with the requirements under § 7.7.9.3 of the zoning regulations and that the conclusion that the board complied with those requirements was unsupported by the record. We do not agree.

The following facts are relevant to our consideration of the plaintiffs' claim. The board approved the defendants' application for a variance and provided the following reasons for its approval: "as presented—will diminish existing non-conformity and will address and improve flood zone issues." The court's memorandum of decision primarily focuses on the requirement of unusual hardship, which we will address in part III. The court did conclude, however, that there was substantial evidence in the record that flood zone issues will be

improved by granting the requested variance. The court stated that "[d]uring the deliberations . . . one of the members expressed the importance of compliance with the flood hazard regulations . . . . Considering the applicable law and the evidence in the record, it must be found that the reasons stated by the [board] for the granting of the variance are pertinent to the considerations which it was required to apply, and such reasons are amply supported by substantial evidence in the record. The plaintiffs have failed to prove that in granting the variance, action of the [board] was illegal, arbitrary or in abuse of discretion." The transcript of the hearing indicates that the defendants discussed the acceptability of alternative locations, compatibility with the existing development, potential flood damage and the overall increased compliance with flood district regulations. The defendants also stated that the new house would be as far from the water as possible and introduced evidence that more than 70 percent of their property lies within the 100 foot setback zone. The board, during its deliberations, noted that the new construction would be the only house standing when the next hurricane hits the area. Additionally, Comeau presented testimony that the existing house was damaged in a hurricane and that it does not comply with various building and habitability codes and requirements.

We do not agree with the plaintiffs' claim that the court failed to address the issue of whether the board complied with the requirements set forth in § 7.7.9.3 of the regulations.[12] We conclude that the court specifically found that the board complied with these regulations when it stated that the approval of the variance

[12] Section 7.7.9.3 outlines considerations for granting of variances from the regulations contained in § 7.7. See Stonington Zoning Regs., § 7.7.9.3. Section 7.7 applies "special regulations to the use of the land in the flood plains of . . . bodies of water . . . which have or tend to have flooded or overflowed their banks." Id., § 7.7. The 100 foot setback requirement is a part of § 7.7. See id., § 7.7.8.3.1. The board was therefore required to consider the standards set forth in § 7.7.9.3 when it reviewed the defendants' application for a variance from the 100 foot setback requirement.

application was supported by evidence that flood zone issues will be improved.

We next turn to the plaintiffs' argument that the court improperly concluded that the board's approval of the variance application complied with the requirements set forth in §§ 7.7.9.3, 7.7.9.5 and 8.10.3 of the regulations. Section 7.7.9.3 provides that the board, in considering applications for a variance, must consider all technical evaluations, relevant factors, standards specified in other sections, a showing of good and sufficient cause, a determination that failure to grant a variance would result in exceptional hardship, as well as eleven specific factors that include danger that materials might be swept onto other lands to the injury of others, danger to life and property due to flooding or erosion damage, the susceptibility of the proposed facility and its contents to flood damage, the compatibility with existing and anticipated development and effects of wave action and flood waters at the site. Stonington Zoning Regs., § 7.7.9.3. Section 7.7.9.5 provides that variances should be issued upon a determination that the variance is the minimum necessary; id.; while § 8.10.3 requires a finding that the strict interpretation of the regulations is unreasonably limited for any and all permitted uses. Id., § 8.10.3. The gist of the plaintiffs' argument is that the board acted arbitrarily when it approved the application without finding that the requested variance is the minimum necessary and that the existing house unreasonably limits the defendants' use of the property. See id., §§ 7.7.9.5 and 8.10.3.

We note that when a zoning authority has stated the reasons for its action, a reviewing court may determine only if the reasons given are reasonably supported by the record and are pertinent to the considerations that the authority was required to apply. *Goldberg* v. *Zoning Commission*, 173 Conn. 23, 25–26, 376 A.2d 385 (1977). The decision of a zoning authority will be disturbed

only if it is shown that it was arbitrary, illegal or an abuse of discretion. *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 444, 418 A.2d 82 (1979). Furthermore, we have held that a "zoning board is comprised of laymen whose responsibility is to protect the interest of the individual property owner by granting a variance when the zoning regulations impose a hardship on the property owner of the nature described by the General Statutes. . . . In searching the record, the trial court may rely on any reason culled from the record which demonstrates a real or reasonable relationship with the general welfare of the community in concluding that the board's decision should be upheld." (Citation omitted.) *Stankiewicz* v. *Zoning Board of Appeals*, 15 Conn. App. 729, 732–33, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989).

Our role therefore is to determine whether the board acted arbitrarily, illegally or in abuse of its discretion and not to indulge in a hypertechnical examination of whether the board complied with all the minute requirements of its regulations. "[C]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their action." (Internal quotation marks omitted.) *Frito-Lay, Inc.* v. *Planning & Zoning Commission*, 206 Conn. 554, 573, 538 A.2d 1039 (1988). We conclude that the board's conclusion that the new construction will address and improve flood zone issues is not arbitrary, illegal or an abuse of discretion. The record indicates that the requirements under § 7.7.9.3 were carefully considered. The board heard the defendants' arguments regarding the acceptability of alternative locations, compatibility with the existing development, potential flood damage and the overall increased compliance with flood district regulations. The record also shows that the board considered danger from hurricanes and flooding because it concluded in

its deliberations that the new construction would be the only one standing when the next hurricane hits the area. Next, the board also fulfilled the requirement under § 7.7.9.5 that the granted variance be minimal when it considered the defendants' argument that the new house would be as far from the water as possible and the evidence that more than 70 percent of the defendants' property lies within the 100 foot setback zone. Finally, the board clearly evaluated whether the strict interpretation of the regulations unreasonably would limit the use of the defendants' property for all permitted uses, an inquiry required by § 8.10.3, when it heard Comeau's extensive testimony about the noncompliance of the existing house with various building and habitability codes and regulations. The board's failure to specifically state, orally or in writing, that it had made these findings does not amount to an exercise of discretion that is arbitrary, illegal or an abuse of discretion. See *Vaszauskas* v. *Zoning Board of Appeals*, 215 Conn. 58, 63–65, 574 A.2d 212 (1990) (zoning board of appeals abused discretion when it acted beyond its authority by granting variance subject to satisfaction of condition impossible to satisfy); *Frito-Lay, Inc.* v. *Planning & Zoning Commission*, supra, 568–74 (zoning commission abused discretion by holding public hearings after mandated time period); *Farrior* v. *Zoning Board of Appeals*, 70 Conn. App. 86, 95, 796 A.2d 1262 (2002) (zoning board abused discretion when it interpreted applicable regulatory language arbitrarily and unreasonably).

We therefore conclude that the court properly concluded that the board complied with the requirements under the flood zone regulations.

III

The plaintiffs' final claim is that the court improperly concluded that the board approved the defendants'

application for a variance without the finding of legal hardship. The plaintiffs argue that the board inaccurately estimated the extent of the diminishing nonconformities and that the court improperly concluded that the elimination of nonconformities was an independent basis for granting the variance in the present case. We disagree.

The following additional facts are relevant to our consideration of the plaintiffs' claim. In its memorandum of decision, the court concluded that the board did not abuse its discretion in granting the requested variance without having determined that the defendants had demonstrated unusual hardship.[13] The court concluded that the elimination of nonconformities served as an independent basis for granting a variance; see *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 559; *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 708–10, 535 A.2d 799 (1988); *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 572, 785 A.2d 601 (2001); and that compliance with flood zone regulations and increased compliance with the 100 foot setback requirement justified the granting of the variance in the absence of unusual hardship. The defendants submitted that the new house would comply with all flood zone regulations except the setback requirement. They presented evidence that the existing house did not comply with applicable building and habitability codes. The defendants also presented evidence that the new construction would be farther away from the water than any other house on that street. During the board's deliberations, a board member stated that the "FEMA improvements are far more important than anything, and I also believe that given time the entire neighborhood is going to be conforming to [regulations], so [they

---

[13] It should be noted here that the strict enforcement of § 7.7.8.3.1 appears to mandate that the defendants must continue residing in the existing house until it is destroyed or demolished or be confined to building on only 24 percent of their property.

are] just on the cutting edge of what's [going to] happen in the years to come." The court emphasized the board's findings that the new structure, unlike the existing one, would be in conformance with flood district standards specified in § 7.7.8.2 and more compliant with the 100 foot setback requirement in § 7.7.8.3.1 than the existing one.

We set forth the standard governing our review of grants or denials of variances. General Statutes § 8-6[14] provides zoning boards with power to grant variances from local zoning regulations. "One who seeks a variance must show that, because of some unusual characteristic of his property, a literal enforcement of the zoning regulations would result in unusual hardship to him. . . . The hardship complained of must arise directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. . . . Where the condition which results in the hardship is due to one's own voluntary act, the zoning board is without power to grant a variance. . . . Where . . . the hardship arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance. . . . Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning

---

[14] General Statutes § 8-6 (a) provides in relevant part that "[t]he zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."

restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of . . . unnecessary hardship. . . . Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect. . . . Zoning regulations have such an effect in the extreme situation where the application of the regulations renders the property in question practically worthless." (Citations omitted; internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 561–62.

"In cases in which an extreme hardship has not been established, [however], the reduction of a nonconforming use to a less offensive prohibited use may constitute an independent ground for granting a variance." Id., 562. Consequently, our Supreme Court in *Vine* held that this court improperly reversed the trial court's judgment upholding the granting of a variance from the town's zoning regulation that required a minimum square footage on all lots. Id., 556, 572. The court concluded that granting the variance would result in a development that more nearly conformed to the technical requirements of the town's zoning regulations and would not result in a more offensive use of the property. Id., 570–71. The court stated that "it would elevate form over substance to insist on [the showing of exceptional hardship] when there is no claim or evidence that granting the variance could result in even minimal harm to the neighborhood or undermine in any way the overarching zoning scheme, especially when there is substantial evidence to support a conclusion that it would result in a more conforming use." Id., 571.

The court in *Vine* relied on two other cases. In *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 703, our Supreme Court affirmed the judgment of the trial court upholding the granting of a variance from a regulation prohibiting the operation of an automobile repair shop. Id., 705–707. The defendants wanted to operate the repair shop instead of a nonconforming aluminum casting foundry. Id., 705. The court recognized that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit . . . . [W]hile the alien use is permitted to continue until some change is made or contemplated, thereupon, so far as is expedient, advantage is taken of this fact to compel a lessening or suppression of the nonconformity." (Citations omitted; internal quotation marks omitted.) Id., 710. The Supreme Court also emphasized the finding of the trial court that the proposed use would be far less offensive to the neighborhood and surrounding residents than a foundry. Id. In *Stancuna* v. *Zoning Board of Appeals*, supra, 66 Conn. App. 565, this court affirmed the judgment of the trial court upholding the granting of a variance from regulations requiring certain side yard setback. Id., 566. The court concluded that the variance would eliminate a nonconforming residential use of the property and allow a commercial use in a commercial zone. Id., 572. The court also noted that the variance was in keeping with the town's comprehensive plan and that the changes appurtenant to the variance would conserve the public health, safety and welfare of the neighborhood. Id.

First, we dispose of the plaintiffs' arguments disputing the board's factual findings, such as the distance of the new construction from the mean high tide, or challenging the accuracy of the defendants' and Comeau's statements. There is no indication that the plaintiffs disputed those factual findings before the board

or the trial court; see *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 589 n.9, 830 A.2d 164 (2003); Practice Book § 60-5; and the credibility of the witnesses and the determination of issues of fact are matters solely within the province of the board. *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 294, 947 A.2d 944 (2008). The board's conclusion that the new construction would diminish nonconformities is furthermore substantially supported by the evidence presented at the hearing. The record reveals that the new construction will be set farther from the mean high tide than the existing one, thereby reducing the nonconformity with § 7.7.8.3.1 of the regulations. The record also reveals that the new construction will conform to all the other flood zone regulations, such as the specific standards in § 7.7.8.2 concerning base flood elevation levels and location of utility connections. Compare *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 170–72, 855 A.2d 1044 (2004) (board's decision to grant variance on ground that less nonconforming use would result not supported by any evidence, including application, and therefore was improper).

Second, we conclude that the court in the present case properly concluded that the law developed in *Vine*, *Adolphson* and *Stancuna* was fully applicable to the present circumstances. The plaintiffs' key argument is that the increased conformance with flood zone regulations is not significant enough to justify the grant of a variance in the present case. We do not see any basis on which to distinguish the present case from *Vine*, *Adolphson* or *Stancuna*. The board found that the grant of a fifty-three foot variance is justified by a decrease in noncompliance with the 100 foot setback requirement set forth in § 7.7.8.3.1 and the elimination of noncompliance with all the remaining flood zone regulations. Compare *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 570–72 (variance from square footage

requirement justifies granting variance where it reduced nonconformity and did not cause even minimal harm to neighborhood); *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 708–10 (nonconforming use of property to operate automobile repair shop justified because it is less offensive to neighborhood than nonconforming use to operate foundry); *Stancuna* v. *Zoning Board of Appeals*, supra, 66 Conn. App. 572 (variance from setback requirement justified where it eliminated nonconforming use, was consistent with town's comprehensive development plan and did not undermine health, safety and welfare of surrounding neighborhood). In the present case, there was substantial evidence that the new construction would reduce and eliminate existing nonconformities and present less of a hazard in case of a flood, and there was no evidence that replacing the existing house would result in even minimal harm to the neighborhood. It is important to also note that the board concluded that with time, all of the houses in the neighborhood would conform to the flood zone requirements and that the defendants were on the cutting edge of new development. *Adolphson* v. *Zoning Board of Appeals*, supra, 710 ("[t]he accepted method of accomplishing the ultimate object is that, while the alien use is permitted to continue until some change is made or contemplated, thereupon, so far as is expedient, advantage is taken of this fact to compel a lessening or suppression of a nonconformity").

We conclude that the court properly upheld the board's conclusion that the elimination and reduction of nonconformances in the present case presented an independent basis for granting a variance. We affirm the court's dismissal of the plaintiffs' appeal.

The judgment is affirmed.

In this opinion the other judges concurred.