DONALD L. PALOZIE *v.* RICHARD T. PALOZIE, COADMINISTRATOR (ESTATE OF SOPHIE H. PALOZIE), ET AL.
(SC 17752)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 14—officially released August 14, 2007

*Martin B. Burke*, with whom was *Neil I. Teller*, certified legal intern, for the appellant (plaintiff).

*Joseph E. Milardo, Jr.*, with whom, on the brief, was *Linda J. Latimer*, for the appellees (defendants).

### Opinion

BORDEN, J. The plaintiff, Donald L. Palozie, appeals[1] from the judgment of the trial court affirming the judgment of the Probate Court denying the plaintiff's application for title and right of possession to a twenty-three acre parcel of land situated on Crane Road in Ellington (Crane Road property).[2] The plaintiff claims that the

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] We note that the record contains conflicting information with respect to the correct address for the Crane Road property. Although the declaration of trust states that the Crane Road property is located at 315 Crane Road, in Ellington, Connecticut, the accounting of the decedent's estate states that the property is located at 42 Crane Road, in Ellington, Connecticut. Both the declaration of trust and accounting of the decedent's estate, however, describe the property by its metes and bounds as follows: a certain parcel

trial court improperly concluded that a declaration of trust executed by the plaintiff's deceased mother, Sophie H. Palozie (decedent), was invalid and unenforceable because the decedent had not manifested an unequivocal intent to create a trust and to impose upon herself the enforceable duties of a trustee. We affirm the judgment of the trial court.

On March 7, 2003, the plaintiff commenced this action against the decedent's estate, which is administered by the defendants, Richard T. Palozie and Joanne Palozie-Weems, by filing an application in Probate Court seeking title and right of possession to the Crane Road property. See General Statutes § 45a-98 (a) (3).[3] In the application, the plaintiff claimed that he recently had discovered a "document entitled '[d]eclaration of [t]rust' dated February 23, 1988 signed by the decedent," wherein the decedent had declared that she held the Crane Road property in trust for the use and benefit of the plaintiff. After conducting a hearing, the Probate Court denied the plaintiff's application, concluding that

of land with buildings situated thereon, in the town of Ellington, county of Tolland, bounded "Northerly on land formerly of John Thompson, now or formerly of Aaron Dobkin; Easterly on the highway; Southerly on land now or formerly of Charles H. Bancroft; and Westerly on land now or formerly of Charles H. Bancroft in part and in part on land now or formerly of Aaron Dobkin. Containing twenty-three (23) acres, more or less, and being the same premises conveyed to Caroline DeGroat dated June 19, 1952 and recorded in the Ellington Land Records on June 26, 1952, at Vol. 54, Page 417." Accordingly, regardless of the accuracy of the address, it is clear that both documents refer to the same parcel of land.

[3] General Statutes § 45a-98 (a) provides in relevant part: "Courts of probate in their respective districts shall have the power to . . . (3) except as provided in section 45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, which trust or estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the trust or estate and including the rights and obligations of any joint tenant with respect to survivorship property . . . ."

the declaration of trust was invalid and unenforceable. Thereafter, the plaintiff appealed from the judgment of the Probate Court to the trial court.[4] See General Statutes § 45a-186 (a) ("[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the Superior Court").

After conducting a trial on the merits of the plaintiff's application,[5] the trial court found the following facts. "On February 23, 1988, [the decedent] asked her grandson David Palozie, who is also the plaintiff's son, to visit her. It was David's birthday and he did go to [the decedent's] home with his wife Susan. While there [the decedent] asked David and his wife, Susan [Palozie], to witness her signature on a document and they did so. The document . . . is entitled '[d]eclaration of [t]rust.' At the time David did not know what the document purported to be, nor was there any evidence that Susan did either. The signature of the settlor appears to be that of [the decedent] and it has not been shown otherwise.

"At the same time [the decedent] asked David and Susan [Palozie] to witness a second document purporting to be a quitclaim deed to the Crane Road prop-

---

[4] The plaintiff also commenced a second action, in which he sought a temporary injunction to enjoin the defendants from selling the Crane Road property during the pendency of the appeal. Thereafter, the trial court granted the defendants' motion to consolidate the plaintiff's appeal from the judgment of the Probate Court with his action seeking a temporary injunction.

[5] See *In re Joshua S.*, 260 Conn. 182, 199, 796 A.2d 1141 (2002) ("[a]s a general matter, when a decision of the Probate Court is appealed to the Superior Court, a trial de novo is conducted"); *Prince v. Sheffield*, 158 Conn. 286, 294, 259 A.2d 621 (1969) ("In an appeal from probate there is a trial de novo in which the appellant has the opportunity to present any evidence which could have been offered in the probate court, whether or not it was actually offered. And in the ordinary probate appeal, the superior court decides the matters on which the appeal was taken without regard to the action or decree of the probate court.").

erty, again with the witnesses having no knowledge of what the document was. . . . The quitclaim deed purports to convey to herself as trustee under the terms of the [d]eclaration of [t]rust, the Crane Road property. The quitclaim deed was not acknowledged and neither it nor the [d]eclaration of [t]rust were recorded on the land records.

"No one, other than [the decedent] was aware of the nature of these documents. Apparently, she kept them in either a small metal box or a suitcase in her home. [The decedent] died, in her home on March 13, 1991, intestate.

"Family members, including the plaintiff and [the decedent's] daughter, Gaye Reyes, gathered at the house. They retrieved a small metal box and a suitcase. The contents of the metal box were briefly examined and then taken by the plaintiff to the house trailer in which he lived, which was located on the property. ([The decedent] lived separately in a house on the same property.)

"Gaye [Reyes] was appointed administratrix of the estate and filed an inventory on March 24, 1992, which included the Crane Road property as an asset of the estate.

"Gaye Reyes was removed as administratrix approximately ten years later because the administration of the estate was not proceeding timely. Two of [the decedent's] grandchildren, Richard Palozie and Joanne Palozie-Weems were appointed as successor coadministrators in June, 2002. In January, 2003, they filed an application to sell the real estate in question. The plaintiff objected to the proposed sale claiming, for the first time since [the decedent's] death in 1991, that he, and not [the decedent's] estate, held legal title to the property by virtue of the purported trust."

On the basis of the foregoing facts, the trial court concluded that the plaintiff had failed to prove, by clear and satisfactory evidence, that the decedent had "adequately manifest[ed] an intention to create a trust and to accept the enforceable duties of trustee." See *Long* v. *Schull*, 184 Conn. 252, 255, 439 A.2d 975 (1981) ("[w]hen an estate is a party, the burden is on the [claimant] . . . to prove the claim by clear and satisfactory proof"). The trial court observed that the decedent had not informed "[t]he witnesses to the '[d]eclaration of [t]rust' . . . what the instrument was," and had "kept the document under her total control during her lifetime with no obligation . . . to the supposed beneficiaries." "The likelihood is that [the decedent] wished to retain total control of the property during her lifetime for her own benefit, and not as a trustee for the plaintiff . . . [and, therefore, the trust instrument] was a poorly designed effort to establish a testamentary document, rather than a trust with the requirements that would entail." In arriving at this determination, the trial court found it noteworthy that: (1) "there was evidence that [the decedent] and . . . [the plaintiff] were not always without conflict in their relationship," as reflected by a family violence protective order issued against the plaintiff on behalf of the decedent in 1990; and (2) the quitclaim deed "was never recorded, nor was it properly acknowledged as required by General Statutes § 47-5."[6] Accordingly, the trial court determined that the declaration of trust was void and unenforceable and,

---

[6] General Statutes § 47-5 provides in relevant part: "(a) All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances or, if the grantor is a corporation, limited liability company or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands. . . ."

therefore, rendered judgment in favor of the defendants.[7] This appeal followed.

The following additional facts are relevant to our resolution of the present appeal. The declaration of trust provides in relevant part: "Whereas I, Sophie H. Palozie, of the Town of Ellington, County of Tolland, State of Connecticut, am the owner of certain real property located at (and known as) 315 Crane Road in the Town of Ellington, State of Connecticut . . . NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that I do hereby acknowledge and declare that I hold and will hold said real property and all my right, title and interest in and to said property and all furniture, fixtures and personal property situated therein on the date of my death, IN TRUST being of sound mind to wit I make this my last private verbal act . . . [f]or the use and benefit of . . . Donald L. Palozie, Trustee [under declaration of trust] February 23, 1988 . . . [but] if such beneficiary be not surviving, for the use and benefit of . . . Gaye M. Reyes . . . ." The instrument further provides: "Upon my death, unless the beneficiaries shall predecease me or unless we all shall die as a result of a common accident or disaster, my [s]uccessor [t]rustee is hereby directed forthwith to transfer said property and all my right, title and interest in and to said property unto the beneficiary absolutely and thereby terminate this trust . . . ."

---

[7] In light of the trial court's conclusion that the declaration of trust was void and unenforceable, the trial court also denied the plaintiff's application for a temporary injunction to enjoin the defendants from selling the property. See footnote 4 of this opinion.

The plaintiff subsequently moved the trial court to articulate the factual basis for its finding that the decedent had not manifested an intent to create a trust or to impose upon herself the duties of a trustee. The trial court denied the plaintiff's motion, noting that "[t]hese matters were addressed in the [trial court's] [m]emorandum of [d]ecision." Thereafter, the plaintiff moved the Appellate Court to review the trial court's denial of his motion for articulation. The Appellate Court granted the motion for review, but denied the relief requested therein.

The plaintiff claims that the trial court improperly found that the decedent had not manifested an intent to create a trust, or to impose upon herself the enforceable duties of a trustee, based on her failure to communicate her intent and on her exclusive retention and control of the trust instrument and quitclaim deed during her lifetime. We disagree and, accordingly, we affirm the judgment of the trial court.

Before addressing the merits of the plaintiff's claim, we briefly review the basic principles that govern the validity and enforcement of trusts. The requisite elements of a valid and enforceable trust are: "(1) a trustee, who holds the trust property and is subject to duties to deal with it for the benefit of one or more others; (2) one or more beneficiaries, to whom and for whose benefit the trustee owes the duties with respect to the trust property; and (3) trust property, which is held by the trustee for the beneficiaries." 1 Restatement (Third), Trusts § 2, comment (f), p. 21 (2003); see also *Goytizolo* v. *Moore*, 27 Conn. App. 22, 25, 604 A.2d 362 (1992) ("[a] trust requires three basic elements: [1] a trust res; [2] a fiduciary relationship between a trustee and a beneficiary requiring the trustee to deal with the trust res for the benefit of the beneficiary; and [3] the manifestation of an intent to create a trust").

"One owning property can create an enforceable trust by a declaration that he holds the property as trustee for the benefit of another person." *Hansen* v. *Norton*, 172 Conn. 292, 295–96, 374 A.2d 230 (1977). A trust may be created "without notice to or acceptance by any beneficiary or trustee"; 1 Restatement (Third), supra, § 14, p. 216; and in the absence of consideration. Id., § 15, p. 222; see also *Hebrew University Assn.* v. *Nye*, 148 Conn. 223, 229, 169 A.2d 641 (1961) ("[i]t is true that one can orally constitute himself a trustee of personal property for the benefit of another and thereby create a trust enforceable in equity, even though without con-

sideration and without delivery"). Moreover, "the settlor may reserve extensive powers over the administration of a trust"; *Hansen* v. *Norton*, supra, 296; and may reserve the right to modify or revoke the trust at will. See, e.g., *DiSesa* v. *Hickey*, 160 Conn. 250, 263–64, 278 A.2d 785 (1971); *Cherniack* v. *Home National Bank & Trust Co.*, 151 Conn. 367, 369–70, 198 A.2d 58 (1964); see also 1 Restatement (Third), supra, § 25, p. 377 (trust "is not rendered testamentary merely because the settlor retains extensive rights such as a beneficial interest for life, powers to revoke and modify the trust, and the right to serve as or control the trustee . . . or because the trust is intended to serve as a substitute for a will"). "No trust, however, is created unless the settlor presently and unequivocally manifests an intention to impose upon himself enforceable duties of a trust nature. . . . If what has been done falls short of showing the complete establishment of a fiduciary relationship, as where the intent to become a trustee is doubtful because what was said or done is as compatible with an intent to make a future gift as with an intent to hold the legal title to property for the exclusive benefit of another, the proof fails to show more than a promise without consideration." (Citations omitted; internal quotation marks omitted.) *Hansen* v. *Norton*, supra, 296.

To determine whether the decedent manifested an intent to create a trust and to impose upon herself the enforceable duties of a trustee, we begin with the language of the trust instrument. See *Heffernan* v. *Freedman*, 177 Conn. 476, 481, 418 A.2d 895 (1979) ("[t]he issue of intent as it relates to the interpretation of a trust instrument . . . is to be determined by examination of the trust instrument itself and not by extrinsic evidence of actual intent"); *Marzahl* v. *Colonial Bank & Trust Co.*, 170 Conn. 62, 64, 364 A.2d 173 (1976) ("One of the basic elements necessary for the creation of a

trust is a manifestation of intention to create it. Effect must be given to that intent *which finds expression in the language used.*" [Emphasis added.]). This is because "where the manifestation of the settlor's intention is integrated in a writing, that is, if a written instrument is adopted by the settlor as the complete expression of the settlor's intention, extrinsic evidence is not admissible to contradict or vary the terms of the instrument in the absence of fraud, duress, undue influence, mistake, or other ground for reformation or rescission." 1 Restatement (Third), supra, § 21, comment (a), p. 322; accord 1 A. Scott, W. Fratcher & M. Ascher, Trusts (5th Ed. 2006) § 4.5, pp. 209–15; cf. *Erickson* v. *Erickson*, 246 Conn. 359, 370, 370–71 n.10, 716 A.2d 92 (1998) (if testamentary instrument is clear and unambiguous, testator's intent is to be determined: "[1] from the language of the will itself; and [2] without resort to extrinsic evidence of the testator's intent"). "If a [trust instrument] is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the [trust instrument] is clear and unambiguous, the [instrument] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [trust instrument] must emanate from the language used . . . rather than from one party's subjective perception of the terms." (Citations omitted; internal quotation marks omitted.) *Montoya* v. *Montoya*, 280 Conn. 605, 612, 909 A.2d 947 (2006).

If, however, the trust instrument "is an incomplete expression of the settlor's intention or if the meaning of the writing is ambiguous or otherwise uncertain, evidence of the circumstances and other indications of the transferor's intent are admissible to complete the terms of the writing or to clarify or ascertain its meaning

. . . ."[8] 1 Restatement (Third), supra, § 21, comment (a), p. 322; accord 1 A. Scott, W. Fratcher & M. Ascher, supra, § 4.5, pp. 209–15. Under such circumstances, the question of the decedent's intent to create a trust and to impose upon herself the duties of a trustee is a question of fact subject to review under the clearly erroneous standard. Cf. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357, 727 A.2d 1260 (1999) ("[a]bsent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact that is subject to reversal on

---

[8] The foregoing principles derive from the parol evidence rule, which, "[a]s we have so often noted . . . is not a rule of evidence, but a substantive rule of contract law. . . . The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversation, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . .

"The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. . . . These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citations omitted; internal quotation marks omitted.) *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357–59, 727 A.2d 1260 (1999).

appeal only if it is clearly erroneous" [internal quotation marks omitted]).

In the present case, we conclude that the trust instrument is ambiguous with respect to whether the decedent intended to create a trust and to impose upon herself the enforceable duties of a trustee. Cf. *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 200, 901 A.2d 666 (2006) ("whether a contract is ambiguous is a question of law for the court"). Although the instrument plainly states that the decedent intended to hold the Crane Road property in trust, it also contains the following language, "being of sound mind to wit I make this my last private verbal act," which imports ambiguity into the trust instrument.[9] "A verbal act is an out-of-court statement that causes certain legal consequences, or, stated differently, it is an utterance to which the law attaches duties and liabilities . . . [and] is admissible nonhearsay because it is not being offered for the truth of the facts contained therein." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 255, 856 A.2d 917 (2004). Of particular significance for purposes of our analysis, however, is not the decedent's characterization of the execution of the trust instrument as a verbal act, which appears to have little or no bearing on her intent to create a trust or to impose upon herself the duties of a trustee, but, rather, her characterization of it as her *last act*. In light of this language, it is unclear

---

[9] During oral argument before this court, the plaintiff conceded that he did not know what the phrase "being of sound mind to wit I make this my last private verbal act" means, other than that the decedent considered the execution of the declaration of trust to be "a serious endeavor." The defendants, in their brief to this court, adopt the reasoning of the Probate Court, which concluded: "It is probably safe to assume that the decedent had little, if any, knowledge of the legal meaning of the term 'verbal act.' . . . The decedent's understanding of the nature of a 'verbal act' is probably less important than the fact that she constitutes this document as her *last* such act. This supports the view that the decedent's intent was purely testamentary in nature and that she did not see the instrument as imposing upon her any present duties or liabilities." (Emphasis in original.)

whether the decedent intended to create a presently enforceable trust, with all of the rights, duties and responsibilities that such a trust entails, or whether she intended to execute a testamentary document, which would become effective and enforceable only after her death. See *Cramer* v. *Hartford-Connecticut Trust Co.*, 110 Conn. 22, 28–29, 147 A. 139 (1929) ("The essential characteristic of an instrument testamentary in its nature is, that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights and divested himself of no modicum of his estate, and per contra no rights have accrued to and no estate has vested in any other person. The death of the maker establishes for the first time the character of the instrument. . . . Upon the other hand, to the creation of a valid express trust it is essential that some estate or interest should be conveyed to the trustee, and, when the instrument creating the trust is other than a will, that estate or interest must pass immediately." [Internal quotation marks omitted.]). Because the declaration of trust is ambiguous, we review the trial court's finding concerning the decedent's intent under the clearly erroneous standard.

"The law governing [our] limited appellate review is clear. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial

court's ruling." (Citations omitted; internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 558–59, 893 A.2d 389 (2006).

Although communication of intent to create a trust and delivery of the trust instrument are "not essential to the existence of a trust [they are] of great importance in determining the real intent of the alleged declarant." 90 C.J.S., Trusts § 66, p. 192 (2002). This is because a settlor's failure to communicate his or her intent and to deliver the trust instrument "is some indication of the absence of a final and definitive intention to create a trust." 1 A. Scott, W. Fratcher & M. Ascher, supra, § 4.2.2, p. 189; see also *Aronian* v. *Asadoorian*, 315 Mass. 274, 276, 52 N.E.2d 397 (1943) (when trust instrument is ambiguous "lack of notice [has] substantial probative force upon the question of intent"); accord 1 Restatement (Third), supra, § 13, comment (c), p. 209 (although "[t]he intention to create a trust may be sufficiently manifested by a settlor without handing an instrument evidencing that intention or otherwise communicating the intention to the trustee, the beneficiary, or any other person . . . [t]he failure of a property owner . . . to communicate such an intention to anyone . . . [such as the failure to hand anyone the instrument an owner had drawn up declaring an intention to hold certain property in trust], is some, but not conclusive, evidence that the property owner had not arrived at a definite, present intention to create a trust"); G. Bogert, Trusts (6th Ed. 1987) § 23, p. 63 ("[w]hile giving another control of the [trust] document is the most usual and natural method of showing an intent that the instrument take effect, this state of mind may also be shown by other means . . . or by acting toward another as if he were the beneficiary of the trust described in the instrument").

In the present case, it is undisputed that the decedent informed neither the beneficiaries of the trust nor any-

one else that she had intended to hold the Crane Road property in trust. Additionally, it is undisputed that she never delivered the trust instrument or the quitclaim deed to the beneficiaries or any other third party, and that she never recorded the trust instrument or the quitclaim deed on the town land records. These undisputed facts amply support the trial court's finding that the decedent had not arrived at a final and definitive intention to create a trust and to impose upon herself the enforceable duties of a trustee.[10]

The plaintiff claims, however, that the trial court's factual finding was clearly erroneous because "different uncontested evidence clearly shows [the decedent's] intention to [create a trust and to impose upon herself] the duties of a trustee." In support of this claim, the plaintiff points out that the decedent acted in a manner consistent with the interests of the beneficiaries during her lifetime by preserving the trust instrument and quitclaim deed and by maintaining the Crane Road property. We reject this claim because the trier of fact "is not required to draw only those inferences consistent with one view of the evidence, but may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 312, 838 A.2d 135 (2004); see also *Wesley* v. *Schaller Subaru, Inc.*, supra, 277 Conn. 558–59 ("In reviewing factual findings, [w]e do not examine the record to determine

---

[10] In light of our conclusion, we do not reach the defendants' claims that the declaration of trust is void and unenforceable because: (1) the beneficiaries of the trust cannot be ascertained with reasonable certainty; (2) the trust instrument is a " 'Dacey Trust,' " which is a "[contrivance] marketed to the general public as a 'way to avoid probate' and resulted in litigation between the Connecticut Bar and Mr. Dacey concerning their improvident use by the public without proper advisement"; and (3) neither the declaration of trust nor the quitclaim deed had been recorded in the town land records as required by § 47-5.

whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." [Citations omitted; internal quotation marks omitted.]). For the reasons previously explained, the trial court reasonably and logically found that the decedent had not manifested an unequivocal intent to create a trust or to impose upon herself the enforceable duties of a trustee.

The judgment is affirmed.

In this opinion the other justices concurred.