## CHRISTINE CIMINO *v.* ZONING BOARD OF APPEALS OF THE TOWN OF WOODBRIDGE
### (AC 29251)

Gruendel, Robinson and Lavery, Js.

---

Argued February 19—officially released October 13, 2009

*Timothy J. Lee,* with whom, on the brief, was *Leonard A. Fasano,* for the appellant (plaintiff).

*Jennifer N. Coppola,* for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Christine Cimino, appeals from the judgment of the trial court denying her appeal from the decision by the defendant, the zoning board of appeals of the town of Woodbridge (board), which denied her request for variances. On appeal, the plaintiff claims that the court improperly found that (1) the parcel at issue was not a preexisting, nonconforming use, (2) the variances were denied properly because there was no hardship, (3) the property is not worthless without the variances and (4) the variances were not consistent with the town's master plan of development. We affirm the judgment of the trial court.

The plaintiff owns an undeveloped piece of land at 21 Ansonia Road in Woodbridge. The parcel consists of 5.06 acres in a residence A zoning district. The town's zoning regulations (regulations) specify that in a residence A zoning district there may be development of a single-family residence on lots with a minimum of 65,000 square feet. The subject property contains approximately three acres of wetlands.

In July, 2005, the board conducted a hearing on the plaintiff's application for a variance from the requirement in footnote 6 of § 3.13[1] of the regulations that "[a]ll new lots proposed in a [r]esidence A [d]istrict created after the effective date of this amendment, whether or not in a subdivision shall be of such shape that a square with 150 feet on each side will fit on the lot within the set back boundaries." The application also sought a variance to allow 1.02 acres of a contiguous nonwetland area other than the two acres of contiguous nonwetland required by the zoning ordinance. There was evidence in the record, which the court found was

[1] Section 3.13 of the regulations contains a nine column table, entitled "Table of General Bulk Regulations." The footnotes to this table referred to herein were inserted in column three, which is entitled "Minimum Lot Size."

not contested, that the pertinent history of the property is as follows:

"The property was part of a larger tract of land for which subdivision approval was sought in 1977. In April, 1977, the then owner . . . of the property and that tract submitted a proposal for approval of seven lots, with the subject property depicted as two lots. That proposal was withdrawn by the applicant. . . .

"The owner then filed another application for subdivision of the larger tract of land, with a map dated September 19, 1977, showing part of the property designated as Lot 5 and the remainder as 'Open Space To Be Dedicated to the Town of Woodbridge'. The owner withdrew the second application on October 3, 1977; shortly before that withdrawal, the inland wetland agency, which had reviewed the September 19, 1977 map, determined that the applicant's proposals for the property 'continued to create a potential for significant impact' on an adjacent watercourse and declined to modify denial of an inland wetland permit. . . .

"Subsequently, the owner of the larger tract submitted an application for approval of four lots, with the subject property no longer designated as Lot 5, but rather shown as 'Remaining Land of Aaron Cohen, Trustee . . . .' The minutes of the November 7, 1977 meeting of the town plan and zoning commission reflect that the owner's engineer stated at the hearing on the application that the owner would file a separate application for approval of the property shown on the previous map as Lot 5 and represented that the board of selectmen had voted to accept the area shown on the earlier map as 'Open Space' at its meeting [on] October 12, 1977. The engineer represented that the owner would file a second application for the tract consisting of the property and land designated as [o]pen [s]pace after obtaining a decision from the inland wetlands agency.

At that meeting on November 7, 1977, the town plan and zoning commission voted to approve the application for four lots. The subject property was not one of the approved lots. . . .

"On November 19, 1977, the owner's agent filed an application for approval of 'Section Two', which included the subject property and which reflected that a report from the inland wetlands agency was pending. The application was scheduled to be heard on December 5, 1977. A legal notice regarding the hearing bears a hand-written notation that the then owner's engineer withdrew that application on November 22, 1977. At its meeting on December 13, 1977, the inland wetlands agency voted unanimously to deny a permit for the property. . . .

"On December 21, 1979, the inland wetlands agency voted to deny another application by the owner's agent for a permit for the property, which had been designated on the previous map as Lot 5." (Internal quotation marks omitted.)

No further applications have been made on the property known as the "Remaining Land of Aaron Cohen, Trustee," since December 21, 1979, until the application that is at issue in this appeal was filed on June 27, 2005. The description of the property in the warranty deed when it was purchased by the plaintiff and her husband and the description when the plaintiff's husband conveyed it to her in a quitclaim deed was "Remaining Land of Aaron Cohen, Trustee . . . ." It was not shown as lot 5 because there was no lot 5 that had been approved by the town's planning and zoning commission. The approved site plan map shows four approved lots on Ansonia Road and a parcel identified as the "Remaining Land of Aaron Cohen, Trustee," bordering on Johnson Road and Ansonia Road.

The plaintiff and her husband bought the property by warranty deed from Alphonso Del Santo and Carol Del Santo, who were the owners of lot 4, on May 27, 1983. The plaintiff's husband conveyed the property to her through a quitclaim deed on May 3, 1996.

In 2001, the planning and zoning commission amended its zoning regulations. The changes included amending footnote 6 of § 3.13, which required a minimum square footage of 150 feet by 150 feet within the setback boundaries. Footnote 7 of § 3.13 was also amended and now requires at least two acres of noncontiguous wetlands.[2] See footnote 1 of this opinion.

The hearing by the board on the plaintiff's application seeking a variance of the square footage regulation and the two acre contiguous nonwetland regulation was held on July 11, 2005. On November 14, 2005, the board, in denying the variances made the following decision by unanimous vote: "[t]he [b]oard acted to deny the variances as requested based on the [b]oard's finding that the hearing record does not establish that the subject property was a buildable zoning lot when the property was originally subdivided, and no hardship was established through the hearing proceeding that changes that fact. The land was originally purchased as remaining land of an approved four-lot subdivision. Changes to the . . . [r]egulations made subsequent to [the] applicant's purchase of the property have not established a hardship. The land is what it was when

---

[2] The amendment provides: "All new lots proposed in a Residence A District that are: (1) created after the effective date of this amendment, and (2) located fifty percent (50%) or more within a drinking water supply watershed mapped or designated by the South Central Connecticut Regional Water Authority or Birmingham Utilities, Inc., shall contain a minimum of two acres of Buildable Lot Area. Buildable Lot Area is defined as that contiguous portion of a lot exclusive of and undivided by any areas of wetland soils and watercourse as defined in Section 22a-38 of the Connecticut General Statutes. All new lots must comply with this requirement whether or not they are part of a subdivision."

it was first purchased—'remaining land', whose value is the same as when the applicant purchased the property in that state."

The board sent notice to the plaintiff in a letter dated November 28, 2005. The plaintiff appealed from the decision to the Superior Court on February 23, 2006. After the parties briefed their claims, a hearing on the merits was held on March 19, 2007. The court, in a memorandum of decision, denied the plaintiff's appeal, finding that the parcel was not a preexisting, nonconforming lot and that the plaintiff had not met her burden to show hardship and compliance with the town's comprehensive plan to control and to regulate property use. The plaintiff filed the present appeal after this court granted her petition for certification to appeal.

I

The plaintiff first claims that the court erred in not finding that her property is a preexisting, nonconforming lot. The plaintiff argues that because the property in question met the bulk requirement for a lot in 1977, it should be considered a fifth lot and that the wetland problem should not be taken into consideration because wetlands were not part of the planning and zoning commission's jurisdiction. The board argues that this claim was not fully developed before the board or the court and therefore is not properly before this court for review. We agree with the board but further conclude that even if this issue had been fully raised before the board, it would not have been raised properly without the plaintiff's first having been denied a certificate of zoning compliance from the town zoning enforcement officer.

To discuss properly the first issue that is raised by the plaintiff, we must first state what this appeal is not about. The issue before the board in the variance application and at the public hearing was *not* a claim

of a preexisting, nonconforming lot and the application of General Statutes § 8-6 (a).

The power of the board is set forth in § 8-6 (a)[3] and General Statutes § 8-7,[4] and is also set forth in § 10.11 of

[3] General Statutes § 8-6 (a) provides: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions and special exemptions under section 8-2g upon which it is required to pass by the specific terms of the zoning bylaw, ordinance or regulation; and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. No such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier such application."

[4] General Statutes § 8-7 provides in relevant part: "The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations or to decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation. An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof. . . . The board shall hold a public hearing on such appeal in accordance with the provisions of section 8-7d. Such board may reverse or affirm wholly or partly or may modify any order, requirement or decision appealed from and shall make such order, requirement or decision as in its opinion should be made in the premises and shall have all the powers of the officer from whom the appeal has been taken but only in accordance with the provisions of this section. Whenever a

the regulations, which states in part: "10.11 The Zoning Board of Appeals shall have the following powers and duties:

"10.111 To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the Enforcement Officer in connection with the enforcement of these Regulations.

"10.112 To hear and decide all matter including special exceptions upon which it is required to pass by the specific terms of these Regulations or any amendments thereof.

"10.113 To determine and vary the application of these Regulations in harmony with their general purposes and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of these Regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured."

The definitions of subdivision and resubdivision as presented in General Statutes § 8-18 are instructive: " '[S]ubdivision' means the division of a tract or parcel

---

zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decision appealed from, it shall state upon its records the reason for its decision and the zoning bylaw, ordinance or regulation which is varied in its application or to which an exception is granted and, when a variance is granted, describe specifically the exceptional difficulty or unusual hardship on which its decision is based. Notice of the decision of the board shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person who appeals to the board, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. . . ."

of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision; 'resubdivision' means a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map . . . ."

"A vacant lot which existed prior to the enactment of the zoning regulations or which becomes nonconforming due to a change in the zoning regulations, is not protected as a nonconforming lot from the existing zoning regulations unless it is a subdivision lot exempted from the change under § 8-26a of the General Statutes or by a provision in the zoning regulations (usually under nonconforming uses) of the municipality protecting such lots from changes in the regulations." R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 53:3, p. 240.

The record reveals that the parcel was never approved as a lot. The record is silent, however, as to why this parcel is not part of one of the approved lots, why, if the intention was to create a fifth lot, resubdivision would not be the appropriate methodology and, finally, the effect of the conveyance of the lot to the plaintiff by the owner of lot 4. These considerations were not presented as part of the variance application. The only issue before the board was the application for variances under § 3.13 of the regulations. There is nothing in the record to show that there was an application to the zoning enforcement officer for a certificate

of zoning compliance claiming that the parcel at issue was a preexisting, nonconforming lot. Pursuant to the state statutes and local regulations, it would take a denial of such an application and an appeal therefrom to confer jurisdiction on the board to adjudicate this issue. We find that the issue of preexisting, nonconforming use is not properly before this court.

## II

What is before this court is an application seeking hardship variances from the 150 by 150 square foot regulation and the two acre, noncontiguous wetland regulation. The plaintiff claims that the court improperly upheld the board's denial of her variances. We conclude that the reasoning of the board was valid to deny the variances. We further conclude that it was clear that the parcel was never approved as a building lot and that the granting of a variance cannot make it an approved lot.

The history of the property shows that the planning and zoning commission approved four lots and left the parcel at issue out as "Remaining Land of Aaron Cohen, Trustee . . . ." A prior application for a five lot subdivision was not approved. The town's inland wetlands agency approved the four lots and disapproved on three occasions the use of this parcel.

"It is elemental that a variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations." *Carlson* v. *Zoning Board of Appeals*, 158 Conn. 86, 90, 255 A.2d 841 (1969). "This is an exceptional power which should be sparingly exercised and can be validly used only where a situation falls fully within the specified conditions." *Devaney* v. *Board of Zoning Appeals*, 132 Conn. 537, 540, 45 A.2d 828 (1946); see *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996). Our Supreme Court has held that "the authority of a zoning board of

appeals to grant a variance under . . . [§ 8-6 (a) (3)] requires the fulfillment of two conditions: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 368, 537 A.2d 1030 (1988).

Our Supreme Court has held that, "where the claimed hardship arises from the applicant's voluntary act, a zoning board lacks power to grant a variance." *Abel* v. *Zoning Board of Appeals*, 172 Conn. 286, 289, 374 A.2d 227 (1977). This is the basis of the purchase with knowledge rule. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 9:4, p. 256. "[T]he purchase with knowledge rule would bar the buyer of an illegal lot from obtaining a variance where he purchased the property with knowledge of the problem." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 93 Conn. App. 1, 20, 887 A.2d 442 (2006) (*McLachlan, J.*, dissenting), rev'd on other grounds, 281 Conn. 553, 916 A.2d 5, aff'd after remand, 102 Conn. App. 863, 927 A.2d 958 (2007).

A parcel that was not approved as a buildable lot has never been held to be one of the specified conditions that a variance may be validly used to resolve. Further, it is not the application of the zoning regulations specifically that is creating the problem for the plaintiff but, rather, the fact that her parcel was never considered anything but "Remaining Land of Aaron Cohen, Trustee . . . ." The record is clear through the deeds for the property, and the approved subdivision map filed in the town's land records, that it was "remaining land" and not designated as a lot in the subdivision. The difficulty or hardship that now plagues the plaintiff was created by her and her husband in the initial purchase from the

Del Santos. The court properly upheld the decision of the board.

### III

The plaintiff further claims that the property is worthless without a variance. The board argues that there was no evidence presented to support this claim. We agree with the board.

There was no evidence presented to the board that the property would be rendered valueless without a variance granted for the plaintiff to build on the property. Then, the plaintiff filed a motion to supplement the record with an appraisal report after she had filed her brief to the trial court. The board filed an objection to the motion. At the hearing on the merits of this case, counsel for the plaintiff orally withdrew his motion. Because we do not have a record for this claim, and the plaintiff withdrew it from the court's consideration, we will not address this claim.

### IV

The plaintiff's final claim is that the variances are consistent with the comprehensive plan. Because our analysis of the hardship requirement for a variance in part II of this opinion was dispositive of the plaintiff's claim that her variance application was denied improperly, we decline to address this claim.

The judgment is affirmed.

In this opinion the other judges concurred.